UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**George L. Russell, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

March 14, 2023

MEMORANDUM TO COUNSEL RE:        <u>The Whiting-Turner Contracting Co. v.</u>
<u>Express Servs., Inc.</u>
Civil Action No. GLR-22-472

Dear Counsel:

Pending before the Court is Defendant Express Services, Inc.'s ("Express") Motion to Dismiss the First Amended Complaint (ECF No. 22). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will deny the Motion.

Plaintiff The Whiting-Turner Contracting Co. ("Whiting-Turner") and Express entered into a contract wherein Express agreed to help staff a construction project based in Tennessee for Whiting-Turner (the "Agreement"). (Am. Compl. ¶¶ 1, 4, ECF No. 18; Agreement at 1, ECF No. 4-1).[1] The Agreement included a duty to defend provision in which Express agreed to defend Whiting-Turner in any litigation stemming from employees it provided to Whiting-Turner. (Agreement ¶ 11.1). Some of the employees allegedly discriminated against others, and the EEOC brought suit against Whiting-Turner as a result (the "EEOC Lawsuit"). (<u>Am. Compl.</u> ¶ 28). Whiting-Turner claims that Express is refusing to defend it in the EEOC Lawsuit, though, and brings suit for a declaratory judgment and breach of contract. (<u>See generally id.</u>).

The Agreement, dated August 31, 2017, states that the staff members provided by Express were Express' employees only, not Whiting-Turner's. (Am. Compl. ¶ 5; Agreement ¶ 1.7). Further, Express agreed to carefully screen its employees before placing them on the project to ensure their "qualifications and competence." (Am. Compl. ¶ 8; Agreement ¶¶ 1.1, 4.1). Additionally, the Express employees were to "provide services in a manner and quality consistent with the best industry standards" and were to "comply with all applicable local, state, and federal

---

[1] Unless otherwise noted, the Court takes the following facts from the First Amended Complaint (ECF No. 18) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Additionally, rather than filing the exhibits to their Complaint as separate attachments, Plaintiffs appended the exhibits together as one exhibit. Thus, the electronic document accessible at ECF No. 4-1 contains several exhibits. The Agreement may be found at pp. 1–9 of ECF No. 4-1. References to exhibit page ranges refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

laws and regulations." (Am. Compl. ¶ 9; Agreement ¶ 2.2). Of note here, the Agreement imposed a duty to defend upon Express, stating that Express shall:

> [D]efend and hold harmless and fully indemnify Whiting-Turner against any and all legal claims, judgments, liens, actions, liabilities, expenses, damages, penalties, or costs, including without limitation attorney's fees, expenses and costs, asserted by anyone, including but not limited to Staff and/or any government agencies, against Whiting-Turner . . . arising or resulting, in whole or in part, from [Express] providing Staff to Whiting-Turner pursuant to this Agreement and/or from any acts or omissions of [Express], its employees, officers, directors, or agents, including but not limited to Staff.

(Agreement ¶ 11.1).

In 2018, Express placed Darren Riley, Clifford Powell, Jr., and Harold Thomas on the Tennessee construction project to perform general labor tasks. (Am. Compl. ¶¶ 12–16, 18). On or about September 20, 2018, Thomas complained that Powell and Riley were bullying him and making fun of his religious beliefs as a Jehovah's Witness. (Id. ¶¶ 15, 17). After Whiting-Turner learned of the complaints, it asked Express to remove Powell and Riley from the project. (Id. ¶ 19). Express agreed and their last day of work was September 20, 2018. (Id.).

After Powell left the project, he submitted a complaint to Express alleging that he had been subjected to discrimination and retaliation on the basis of his race. (Id. ¶ 22). Whiting-Turner learned of his allegations on September 26, 2018 and conducted an internal investigation. (Id. ¶ 24). Whiting-Turner concluded that Powell's claims were "unfounded and meritless." (Id.).

In any event, on August 17, 2021, the EEOC issued a Letter of Determination indicating that there was reasonable cause to believe that Whiting-Turner had violated Title VII with respect to Powell, Riley, and other unnamed African-American workers. (Id. ¶ 26). At some unspecified point during the administrative proceedings, Express "reached a resolution" with the EEOC. (Id. ¶ 27). Whiting-Turner presumably did not, and on September 30, 2021, the EEOC filed a class action lawsuit against Whiting-Turner in the United States District Court for the Middle District of Tennessee. (Id. ¶ 28). The EEOC alleges that Powell, Riley, and other members of the class were subjected to a hostile work environment and retaliated against on the basis of race. (Id. ¶ 28).

Whiting-Turner claims that Express and its employees "caused or contributed to the alleged hostile work environment." (Id. ¶ 31). Whiting-Turner points to an allegation in the EEOC Lawsuit that an unnamed "White crew leader" discriminated against Powell and Riley by referring to each of them as "boy" instead of using their names. (Id. ¶ 31). Whiting-Turner claims that the crew leader is Randy Spaulding, an Express employee placed on the project under the Agreement. (Id. ¶ 32). The EEOC also alleges that after Spaulding was reassigned, a "new White crew leader" began to supervise Powell and Riley. (Id. ¶ 36). The EEOC claims that the new crew leader was also "demeaning and disrespectful," and snapped her fingers at Black workers when telling them what to do. (Id. ¶¶ 36–39). Whiting-Turner alleges that the new White crew leader was Express

employee Nicole Boutiette. (Id. ¶ 38). Finally, Whiting-Turner alleges that Express has refused to defend it in the EEOC Lawsuit despite the terms of the Agreement. (Id. ¶¶ 42–43).

On December 15, 2021, Whiting-Turner filed its Complaint in the Circuit Court for Baltimore County. (ECF No. 4; see Case No. C-03-CV-21-4152 (Circ.Ct.Md.)). On February 25, 2022, Express removed the case to this Court on diversity grounds. (See Notice Removal at 1, ECF No. 1). On March 25, 2022, Express moved to dismiss the Complaint. (ECF No. 17). Whiting-Turner filed an Amended Complaint on April 14, 2022 (ECF No. 18), thereby mooting the original Motion. In the Amended Complaint, Whiting-Turner seeks a declaratory judgment for duty to defend (Count I) and a claim for breach of contract (Count II).

On April 27, 2022, Express filed the pending Motion to Dismiss Amended Complaint. (ECF No. 22). Whiting-Turner opposed the Motion on May 11, 2022 (ECF No. 23), and Express filed a Reply on May 25, 2022 (ECF No. 24).

On December 12, 2022, this case was transferred to this Chambers from Judge Deborah L. Boardman. (See generally Docket, No. GLR-22-472).

## Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**Declaratory Judgment**

First, Whiting-Turner seeks a declaratory judgment based on Express' alleged failure to defend it in the EEOC Lawsuit. (Count I). At bottom, the Court finds that Whiting-Turner has stated a claim and will deny Express' Motion.

Under the Declaratory Judgment Act of 1934, codified at 28 U.S.C. § 2201(a):

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

"A declaratory judgment action is appropriate when 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality.'" Ass'n of Am. Publishers, Inc. v. Frosh, 607 F.Supp.3d 614, 617 (D.Md. 2022) (quoting Kotkowski v. Nationwide Prop. & Cas. Ins., 564 F.Supp.3d 405, 409 (D.Md. 2021)). In order to state a claim for declaratory judgment, a plaintiff must meet three conditions:

> (1) the complaint alleges an 'actual controversy' between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction.

McNulty v. Casero, 479 F.Supp.3d 200, 208 (D.Md. 2020) (quoting Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004)). The decision to grant a declaratory judgment is one of judicial discretion. Frosh, 607 F.Supp.3d at 617 (quoting A.L. Mechling Barge Lines v. United States, 368 U.S. 324, 331 (1961)). Further, "the Fourth Circuit has held that a district court must have 'good reason' to decline to entertain a declaratory judgment action." McNulty, 479 F.Supp.3d at 209 (quoting Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994)).

Whiting-Turner adequately pleads its declaratory judgment claim. First, the actual controversy element is met. Evaluation of the first element is a fact-specific inquiry. See Hogs & Heroes Found., Inc. v. Heroes, Inc., 202 F.Supp.3d 490, 495 (D.Md. 2016). Whiting-Turner identifies an actual controversy between the parties as to whether Express has a duty to defend Whiting-Turner in the EEOC Lawsuit, and the controversy is sufficiently real and concrete because of the ongoing litigation. Second, this Court has subject matter jurisdiction as the parties are diverse. See Volvo Constr. Equip., 386 F.3d at 593 ("[I]f the parties are diverse, a federal court may possess subject matter jurisdiction over a state-law contract dispute."). Finally, this Court would not abuse its discretion in adjudicating the declaratory judgment. Indeed, the Court should rule on the merits in a declaratory judgment action where declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and "will terminate and afford relief

from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Here, Whiting-Turner is in a position of uncertainty and insecurity over whether Express will or is otherwise contractually obligated to defend it in the EEOC lawsuit. This Court has "great latitude in determining whether to assert jurisdiction over declaratory judgment actions," and resolution of this question would end the ongoing uncertainty over the limits of the parties' contract. Id. Accordingly, there is no "good reason" to decline to review Whiting-Turner's declaratory judgment claim. See McNulty, 479 F.Supp.3d at 209.

In its Motion, Express does not raise any arguments as to the elements of a declaratory judgment action. (See Mem. Supp. Def.'s Mot. Dismiss First Am. Compl. ["Mot."] at 4–13, ECF No. 22-1). Instead, it raises broad arguments that appear intended to counter the declaratory judgment and breach of contract claims generally. First, it contends that the Amended Complaint does not meet the Iqbal/Twombly standard because Whiting-Turner's "claim," again speaking generally, "is not facially plausible." (Mot. at 5). Express argues that Whiting-Turner has tried "to avoid liability and shift the Court's focus away from its own intentional misconduct." (Id. at 5–6). Cutting through the vague argumentation, the crux of Express' point is that Whiting-Turner's allegations in the Amended Complaint somehow contradict the allegations in the EEOC Lawsuit, the Court must accept the allegations in the EEOC Lawsuit as true, and therefore Whiting-Turner's claims do not meet the Iqbal/Twombly standard. (Id. at 5–6). But Express concedes that at the motion to dismiss stage, it recognizes it is appropriate for this Court to "accept the factual allegations in [Whiting-Turner's] complaint as true." (Id. at 3). Further, Express does not offer any support for its implicit proposition that where two complaints filed in separate jurisdictions contradict one another, the Court must credit the allegations in the outside complaint above those in the case before it. (See generally Mot.). Nor does Express specify how Whiting-Turner's allegations are contradicted by the EEOC Lawsuit or otherwise move for this Court to take judicial notice of the EEOC Lawsuit. Express' position is ungrounded in facts or law and the Court will deny its Motion as to Count I.

As Express' remaining general arguments appear to pertain more to Whiting-Turner's breach of contract claim, the Court will address them in its consideration of Count II.[2]

**Breach of Contract**

Next, Whiting-Turner alleges a claim for breach of contract again based on Express' failure to defend it in the EEOC Lawsuit. (Count II). At bottom, the Court finds that Whiting-Turner has adequately pleaded a breach of contract and that Express' remaining general arguments fail.

"To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" Yarn v. Hamburger L. Firm,

---

[2] Again, Express does not organize its Motion by the counts pleaded in the Amended Complaint or the elements of the respective claims. Accordingly, the Court must guess to which claims Express' broad arguments apply.

LLC, No. RDB-12-3096, 2014 WL 2964986, at *3 (D.Md. June 30, 2014) (quoting <u>RRC Ne., LLC v. BAA Md., Inc.</u>, 994 A.2d 430, 442 (Md. 2010)).

Contract interpretation is "ordinarily a question of law for the court." <u>Tate v. Am. Gen. Life Ins. Co.</u>, No. RDB-21-2726, 2022 WL 4225485, at *4 (D.Md. Sept. 13, 2022) (quoting <u>Grimes v. Gouldmann</u>, 157 A.3d 331 (Md.Ct.Spec.App. 2017). Typically, courts are "limited to the four corners of the agreement." <u>Id.</u> (quoting <u>Walton v. Mariner Health of Md., Inc.</u>, 894 A.2d 584 (Md. 2006)). In interpreting a contract, courts consider "what a reasonable person in the position of the parties would have meant at the time it was effectuated." <u>Id.</u> (quoting <u>General Motors Acceptance v. Daniels</u>, 492 A.2d 1306 (Md. 1985)).

Whiting-Turner claims that under § 11.1 of the Agreement, Express agreed to defend it in cases such as the EEOC Lawsuit and that it has breached that agreement by failing to do so. (Am. Compl. ¶¶ 49–51). Express responds that it does not owe Whiting-Turner a contractual obligation because it only agreed to defend Whiting Turner "against claims arising from acts or omissions" of Express, not actions by Whiting-Turner. (Mot. at 9). But Express does not actually argue that Spaulding and Boutiette were Whiting-Turner employees—rather, it claims that because it "reached a resolution" with the EEOC during the administrative proceedings, "the acts or omissions of Defendant and Defendant's employees are no longer at issue." (Mot. at 8–9). Express' argument misses the mark.

Under the Agreement, Express agreed to:

> [D]efend . . . Whiting-Turner against any and all legal claims . . . asserted by anyone . . . against Whiting-Turner . . . <u>arising or resulting, in whole or in part, from [Express] providing Staff to Whiting-Turner pursuant to this Agreement.</u>

(Agreement § 11.1 (emphasis added)). In the First Amended Complaint, Whiting-Turner alleges that the "White crew leader[s]," Spaulding and Boutiette, were Express employees when they engaged in the wrongful and discriminatory conduct that resulted in the EEOC Lawsuit. (Am. Compl. ¶¶ 12–13, 25, 28, 31–39). Express does not substantively address whether Spaulding and Boutiette were Express employees under the terms of the Agreement. Instead, it vaguely posits that the Agreement cannot be interpreted to apply to Whiting-Turner's "own intentional misconduct." (Mot. at 5). Express again fails to support its sweeping claims of intentional misconduct with any real facts. Instead, it suggests that because it resolved the EEOC's claims against it, it is somehow free from any of its obligations under the Agreement. Not so.

Express cannot credibly argue that its resolution with the EEOC makes its contractual obligations to Whiting-Turner disappear. The unambiguous language in the Agreement states that Express must defend Whiting-Turner against any and all legal claims arising, in whole or in part, from Express' role providing staff to Whiting-Turner. Whiting-Turner alleges that Spaulding and Boutiette engaged in the discriminatory behavior leading to the EEOC Lawsuit and that they were Express employees. Thus, Whiting-Turner has adequately alleged that Express is contractually bound to defend it in litigation arising from Spaulding and Boutiette's mistreatment of Powell and Riley. Further, there is no language in the Agreement that suggests Express can avoid its duty to

defend by independently settling claims against it with another party or because it is not a named party in the litigation. As such, Express' repetition of the fact that it came to a resolution with the EEOC is of no moment. See MetroPCS Wireless, Inc. v. Telecomms. Sys., Inc., No. WDQ-09-601, 2009 WL 3418581, at *3 (D.Md. Oct. 20, 2009) (denying motion to dismiss where agreement did not require defendant to be named in the suit to trigger duty to defend).

Next, Express argues that by law, a duty to defend cannot be applied to negligence or intentional harms. (Mot. at 9). Curiously, it cites no law to support this proposition and instead rests its argument on cases discussing indemnification. (See Mot. at 9–10); Chesapeake Bay Found., Inc. v. Weyerhaeuser Co., No. PWG-11-47, 2015 WL 2085477, at *9 (D.Md. May 4, 2015) ("A duty to defend is separate from a duty to indemnify." (quoting Max's of Camden Yards v. A.C. Beverage, 913 A.2d 654, 660 (Md.Ct.Spec.App. 2006))). But Express concedes that the "First Amended Complaint pertains only to the duty to defend aspect of the Agreement's indemnification clause and not indemnification itself." (See Mot. at 9–10 n.3 (emphasis added)). Thus, Express' citations to cases covering indemnification are inapplicable and the Court finds that it would be inappropriate to dismiss on these grounds.

Finally, Express argues that Whiting-Turner's claims must fail because the duty to defend does not extend to Title VII disparate treatment claims. (Mot. at 11–13). In support, Express relies on an unpublished case from this District, EEOC v. Blockbuster, Inc., No. RWT-07-2612, 2010 WL 290952 (D.Md. Jan. 14, 2010). (Mot. at 11). But the case is inapposite and of little help to Express.

In EEOC v. Blockbuster, Inc., this Court reviewed on reconsideration its decision to grant a motion for judgment on the pleadings in a contractual claim for indemnification after the EEOC brought suit against Blockbuster for alleged Title VII violations. 2010 WL 290952, at *1. The Court declined to reopen the case, holding that Blockbuster's contractual claim for indemnification was preempted by Title VII. Id. at *3. The Court explained that the legislative purpose behind Title VII was to ensure equal employment opportunities and eliminate discriminatory practices, and that purpose would be "thwarted" if Blockbuster could "contract around its obligations and shift its entire responsibility for complying with Title VII." Id. at *4. First, Blockbuster is inapplicable because it relates to indemnification and not to the duty to defend. Again, Whiting-Turner seeks a defense in the EEOC's claims of discrimination as they relate to the conduct of Express' employees and has explicitly stated it is not seeking indemnification. Second, the policy rationales behind this Court's decision in Blockbuster do not exist here—Whiting-Turner is not seeking to "shift its entire responsibility for complying with Title VII." See id. at *4. It seeks coverage for legal expenses, not full indemnification for any judgment that may be entered in the EEOC Lawsuit. Therefore, Express' final argument fails.

For the foregoing reasons, the Court finds that Whiting-Turner has stated claims for declaratory judgment and breach of contract. Accordingly, the Court DENIES Express' Motion to Dismiss (ECF No. 22). Express shall ANSWER the First Amended Complaint (ECF No. 18) in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly.

_____ /s/

George L. Russell, III
United States District Judge